Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, October 25, 2007 2:23:13 PM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHELLE DENISE JOHNSTON, | ) | Case No 05-6288 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| MICHELLE DENISE JOHNSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 06-180 |
| | ) | |
| VALLEY CREDIT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Michelle Denise Johnston (the "Debtor") seeks entry of summary judgment against Valley Credit Services, Inc. ("Valley Credit"), for allegedly violating the discharge injunction of 11 U.S.C. § 524(a) by engaging in post-petition collection activity. Valley Credit also filed a cross-motion for summary judgement arguing that it cannot be liable for any purported violation of the Debtor's order of discharge based on the undisputed facts of this case.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party

moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

Pre-petition, the Debtor owed money to Charles Town Water Department (the "Water Department") for services. When the Debtor filed her October 14, 2005 Chapter 7 bankruptcy petition, however, she did not schedule the Water Department as a creditor. Consequently, the Water Department never received notice of the Debtor's bankruptcy filing or her January 25, 2006 discharge. Post-petition, the Debtor also failed to make any payment to the Water Department for on-going services, and on May 27, 2006, the Water Department applied the Debtor's $55 security deposit to her outstanding water bill. On July 18, 2006, the Water Department referred the Debtor's account to Valley Credit for collection. At that time, the Debtor's outstanding water bill was $295.54, a portion of which would have been related to a pre-petition obligation.[1]

---

[1] As elicited during the deposition of Thomas Stovall, general manager of Valley Credit, the Debtor was billed $105.02 by the Water Department on September 9, 2005. This bill was not paid.

-2-

Unlike the Water Department, Valley Credit was listed on Schedule F of the Debtor's petition as the collection agent for two separate entities, Waste Management and Keystone Dental. Consequently, Valley Credit had notice of the Debtor's bankruptcy filing, and her order of discharge as it related to those two accounts.

According to the Agreement for Collection Services between the Water Department and Valley Credit, the Water Department is only allowed to send Valley Credit valid and legally enforceable claims, i.e., claims that have not been discharged in bankruptcy. When Valley Credit received the account from the Water Department, it prepared an initial dunning letter, and Valley Credit's general manager, Thomas Stovall, testified regarding Valley Credit's bankruptcy related procedures:

> A.  The internal – the account is entered on a particular day. The wash[2] is done that night as the letter is generated. If the wash picks up that its inside the bankruptcy period the letter will be stopped.
> . . . .
> A.  The external is . . . . usually done within three working days and it is sent to UNISCORE and then it is returned the day after we send it.
> . . . .
> Q.  So when your internal wash picks up Michelle D. Johnston and the new account's in that name, Michelle D. Johnston, your sole evaluation, and I think from what you told me, would be to look at the date of last service or last payment as provided by your client to determine whether or not you all believe its inside or outside the bankruptcy?
>
> A.  That is correct. Unless the client has indicated otherwise.

(Thomas Stovall Depo., 61-62).

Because the Water Department did not include the Debtor's social security number or date of birth on the account, the initial, internal wash treated the account as new business, and it did not link to those

---

The Debtor filed Bankruptcy on October 14, 2005, and she received a second water bill on November 7, 2005, for $86.93. Accordingly, all of the September 9, 2005 bill, and a portion of the November 7, 2005 bill, would have related to the Debtor's pre-petition consumption of services. The Debtor did not make any voluntary, post-petition payments to the Water Department.

[2] In this context, a "wash" refers to Valley Credit's computer program that checks an account referred for collection against Valley Credit's bankruptcy database.

accounts that Valley Credit was handling on behalf of Waste Management or Keystone Dental, which had both been closed due to the Debtor's bankruptcy. Thus, when Valley Credit received the account from the Water Department, it was not immediately aware that the Debtor had other accounts that were also placed with Valley Credit.

On August 4, 2006, Valley Credit received a UNISCORE report, which returned the Debtor's social security number. At this time, Valley Credit was able to link the Debtor's account with the Water Department to her earlier, closed accounts with Waste Management and Keystone Dental. However, because the account referral from the Water Department indicated that the last meter-read date was January 4, 2006, and that the last pay date was May 27, 2006, Valley Credit proceeded to collect the debt on the belief that it was related to service charges incurred after the Debtor filed her October 14, 2005 bankruptcy.

Accordingly, Valley Credit made three additional attempts to collect the account placed with it by the Water Department. Valley Credit made two collection calls to the Debtor on September 18, 2006 and October 3, 2006, and it sent the Debtor a collection letter on October 5, 2006. After the letter of December 5, 2006, the Debtor's counsel contacted Valley Credit and all further collection actions ceased.

### III. DISCUSSION

The Debtor asserts that all the necessary elements for establishing a violation of the discharge injunction are satisfied, and the Debtor is entitled to declaration to that effect. Valley Credit, however, contends that no contempt sanctions are warranted based on the facts of this case.

**A.      The Debtor's Motion for Summary Judgment**

The Debtor argues that Valley Credit received notice of the Debtor's underlying bankruptcy petition and discharge because it was listed on the Debtor's mailing matrix as a collection agent for debts owed to Waste Management and Keystone Dental. The Debtor also asserts that Valley Credit attempted to collect on a pre-petition debt owed to the Water Department, and, therefore, violated the Debtor's discharge injunction. Consequently, in the Debtor's view, all that remains is for the court to determine the amount of sanctions to be imposed against Valley Credit for its violation of the Debtor's discharge injunction.

The discharge injunction provided by § 524 of the Bankruptcy Code prohibits a creditor from

-4-

attempting to collect on a debt that has been discharged in a bankruptcy proceeding. The discharge injunction is effective as of the date that a debtor receives a discharge. 11 U.S.C. § 524(a). A violation of the discharge injunction is punished by contempt of court. *E.g.*, *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2005) ("A party who knowingly violates the discharge injunction can be held in contempt . . . ."); *Bessette v. Avco Fin. Serv.*, 230 F.3d 439, 445 (1st Cir. 2000) ("[A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . . Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief . . . when creditors have engaged in conduct that violates § 524."); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) ("The discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt . . . .").

Determining whether a party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it. *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989); *see also ZiLog, Inc.*, 450 F.3d at 1007 (same); *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (stating that to establish civil contempt, the movant must establish four elements by clear and convincing evidence: " '(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.' ") (citation omitted).

In this case, the Debtor acknowledged that she neglected to include the debt that she owed to the Water Department on her schedule of unsecured creditors, and the Water Department never received notice of the Debtor's bankruptcy. Because the Debtor's case was a no asset Chapter 7, however, the pre-petition debt owed to the Water Department was discharged. *E.g.*, *Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269 (11th Cir. 2002) ("'Pursuant to § 727(b), the Debtor receives a discharge from all debts that arose before the date of the order for relief under Chapter 7, regardless of whether a proof of claim based on any such debt or liability is filed . . . . [T]he Debtor's Chapter 7 case was a no asset case with no claims bar date set; therefore, [the creditor] had suffered no prejudice because [the

– 5 –

creditor] will have an opportunity to file a claim if any assets are discovered. . . . . [The creditor's] claim was discharged by operation of law under § 727(b).").

Accordingly, when the Water Department sent the Debtor's account to Valley Credit for collection on July 18, 2006, there was no indication in the referral that the Debtor had filed bankruptcy, or that any portion of the account was related to pre-petition services. Moreover, the account referral did not contain the Debtor's social security number or birth date, information which would have allowed Valley Credit to link the Water Department's account with the two other accounts it had previously attempted to collect on behalf of Waste Management and Keystone Dental, which were subsequently discharged in bankruptcy.

Therefore, no evidence suggests that Valley Credit knew of the discharge injunction issued by the court when Valley Credit sent the collection letter to the Debtor on July 19, 2006. The collection letter informed the Debtor that she had 30 days to dispute the debt, and unless the debt was disputed, Valley Credit would assume that the debt was valid.

By August 4, 2006, after Valley Credit received the Debtor's UNISCORE report, Valley Credit was able to link the Debtor's account with the Water Department to the two other discharged accounts with Waste Management and Keystone Dental. Viewing the documentation provided by the Water Department, however, Valley Credit noticed that the documents reflected a last meter-read date of January 4, 2006, a last bill date of February 27, 2006, and a last payment date of May 27, 2006. Based on this information, and the fact that the Debtor never responded to the initial collection letter to dispute the validity of the debt, Valley Credit assumed that the Water Department's services were post-petition and were not encompassed within the scope of the Debtor's discharge injunction. Consequently, Valley Credit made two collection calls to the Debtor on September 18, 2006 and October 3, 2006, and sent an additional collection letter to the Debtor on October 5, 2006. When the Debtor's attorney informed Valley Credit that a portion of the debt being collected was discharged in bankruptcy, Valley Credit ceased further collection activity.

The Debtor asserts that Valley Credit had an independent duty to investigate – beyond the face of the documentation initially supplied by the Water Department – whether any portion of the Water Department's account was related to pre-petition services. Based on the facts of this case, the court

disagrees.

Namely, (1) Valley Credit's agreement with the Water Department provided that only valid accounts would be referred for collection (the Water Department believed that the account was valid because it was never noticed of the Debtor's bankruptcy); (2) no indication exists in the account referral that a portion of the water service charges related to pre-petition services; (3) Valley Credit sent a letter to the Debtor on July 19, 2006, asking the Debtor to inform it of whether the debt was valid within the next 30 days, to which it never received a response; and (4) when the Debtor's attorney informed Valley Credit that at least a portion of the Water Department's account was discharged in bankruptcy, Valley Credit ceased all collection activity.  Based on these facts, the court does not believe that Valley Credit had knowledge of the Debtor's bankruptcy discharge as it related to the Debtor's delinquent account with the Water Department, and, under the circumstances, believes that the minimal investigation conducted by Valley Credit was reasonable.  *Cf. Patrick v. Check Brokerage Corp. (In re Patrick)*, 300 B.R. 915, 917-18 (Bankr. S.D. Ill. 2003) (finding that the creditor, who proceeded to collect a discharged debt based on a name mix-up, had a duty to perform a minimal investigation as to whether the account debtor had filed bankruptcy *after* receiving correspondence from the debtor's attorney asking that collections actions be stopped because the account was discharged in bankruptcy).

In sum, the Debtor has not sufficiently demonstrated that Valley Credit knew that the Debtor's discharge injunction encompassed a portion of the debt that it was attempting to collect on behalf of the Water Department.  Therefore, the Debtor's motion for summary judgment will be denied.

**B.     Valley Credit's Motion for Summary Judgment**

In ruling on Valley Credit's contention that no violation of the discharge injunction exists in this case, the court must consider the uncontested facts in light of the Debtor's substantive evidentiary burden at trial – the Debtor must show by clear and convincing evidence that Valley Credit violated the discharge injunction.  *See, e.g.*, *ZiLOG*, 450 F.3d at 1007 ("[T]he party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the sanctions are justified."); *Ashcraft*, 218 F.3d at 301 (requiring civil contempt to be proven by clear and convincing evidence).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [liability] by

– 7 –

clear and convincing evidence."); 11 *Moore's Federal Practice – Civil* § 56.13[3] (2007) ("The standard of proof the party will be held to at trial will directly impact on the court's evaluation of the sufficiency of the evidence presented in opposition or furtherance of the summary judgment motion.").

In this regard, the Debtor outlined its theory as to Valley Credit's knowledge of the Debtor's discharge injunction, as it related to the debt owed to the Water Department:

> On August 4, 2006, upon receipt of the results of the wash through UNISCORE, the Plaintiff's social security number was returned and entered into the system with respect to the subject account. At that time, August 4, 2006, the subject account was linked to the two prior accounts which had been closed for bankruptcy. Clearly, at this point Valley Credit Services not only had knowledge of the Plaintiff's bankruptcy filing but had associated the bankruptcy filing with the subject account that they were attempting to collect.
>
> However, rather than ceasing any attempts to collect the debt and performing a proper analysis of whether or not the debt was included and discharged in the bankruptcy case, the Defendant chose to ignore the bankruptcy filing information and proceeded with attempting to collect the debt without contacting the Charles Town Water Department to obtain the dates of service or further account information which would have enabled the Defendant to determine whether or not the debt was incurred pre-petition or post-petition. Instead, the Defendant only looked at the last transaction date/last date of payment, which is completely irrelevant in the context of bankruptcy, and proceeded based upon the fact that this date (May 27, 2006) was after the date of discharge. As the Defendant admits that the last pay date is not relevant and the Defendant further does not ensure that it is utilizing correct dates of service to determine if the bankruptcy applies to the debt, the bankruptcy washes it completes are rendered useless.
>
> . . . .
>
> If the Defendant had only made . . . inquiry of its client regarding the account information at the time the account was initially linked to the two other bankruptcy accounts, the Defendant could have avoided the instant litigation. Rather, they chose to proceed blindly . . . without making the proper analysis to determine if this debt was in fact discharged in the underlying bankruptcy case.

(Pl.'s Mot. Summ. J. 4-6).

At best, the Debtor's argument demonstrates that Valley Credit could have taken steps to ensure that no portion of the debt owed to the Water Department had been discharged in bankruptcy. The Debtor does not dispute that none of the documents received by Valley Credit from the Water Department indicate

– 8 –

– clearly and convincingly – that a portion of the amount owed was related to pre-petition services. In fact, when the Debtor's attorney began reviewing the Debtor's water usage record to demonstrate that a portion of the services were rendered pre-petition, Valley Credit stated that it didn't have that document when it received the account. No date on the account transferred to it by the Water Department referenced a pre-petition time period. William Hopkinson, Valley Credit's president and chief executive officer, explained that Valley Credit instructs its clients to list the last transaction date on every account. While the Debtor's last voluntary payment was on August 9, 2005, during the pre-petition period, the Water Department listed the date of last payment as May 27, 2006, the day that it applied the Debtor's security deposit to her outstanding account balance. Had the Water Department indicated that the date of the last payment was August 9, 2005, then Mr. Hopkinson stated that Valley Credit's system would have recognized the account as being in bankruptcy and it would have been immediately closed. Based on these undisputed facts, the court cannot conclude that the Debtor can meet its burden of demonstrating by clear and convincing evidence that Valley Credit knew it was attempting to collect the Water Department's debt in violation of the discharge injunction when it made collection calls on September 18, 2006 and October 3, 2006, or when it sent a collection letter on October 5, 2006. Importantly, when the Debtor's attorney informed Valley Credit that the account was included in the Debtor's bankruptcy, Valley Credit ceased all collection activity.

## IV. CONCLUSION

The court will enter a separate order denying the Debtor's motion for summary judgment and granting Valley Credit's motion for summary judgment on the basis that, after considering the uncontested facts of this case, the Debtor cannot demonstrate by clear and convincing evidence that Valley Credit had knowledge that the Debtor's discharge injunction applied to the debt that they were attempting to collect on behalf of the Water Department.